STATE MECHANICAL CONTRACTORS, INC., Plaintiff-Appellant, v. THE VILLAGE OF PLEASANT HILL, PIKE COUNTY, Defendant-Appellee (W. H. Klingner & Associates, Defendant).

Fourth District   No. 4—84—0410

Opinion filed January 10, 1985.—Modified on denial of rehearing May 20, 1985.

Rammelkamp, Bradney, Hall, Dahman & Kuster, of Jacksonville (Larry D. Kuster, of counsel), for appellant.

Kent R. Schnack, of Loos, Schnack & Siebers, of Quincy, and William E. Lowry, of Pittsfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On September 29, 1983, plaintiff, State Mechanical Contractors, Inc., filed suit in the circuit court of Pike County against defendants, the village of Pleasant Hill, Pike County (the village), and W. H. Klingner & Associates (Klingner). The complaint sought damages for the profits plaintiff would have received had it been awarded a public works contract upon which it had bid, but which was awarded to another. Upon separate motions to dismiss by the defendants, the court dismissed count II against Klingner on December 21, 1983, and count I against the village on December 28, 1983. On January 10, 1984, plaintiff filed a motion to vacate the December 28, 1983, judgment of dismissal. That motion was denied on May 10, 1984. Plaintiff filed notice of appeal on June 4, 1984. We affirm.

Taken with the case was a motion by the village to dismiss the appeal as being not timely filed. Supreme Court Rule 303(a)(1) requires the filing of a notice of appeal from a "final judgment" to be made in the trial court within 30 days of its entry but "if a timely post-trial motion directed against the judgment is filed [in either a jury or nonjury case], within 30 days after the entry of the order disposing of the *** motion." (87 Ill. 2d R. 303(a)(1).) Thus, plaintiff's notice of appeal, filed June 4, 1984, was timely only if (1) its motion to vacate, filed January 10, 1984, was a "post-trial motion," within the meaning of Rule 303(a), which would extend the time for appeal from the judg-

ment of December 28, 1983, disposing of the last issue in the case, or (2) unless the May 10 order stands, of itself, as a final order.

■ The village maintains that plaintiff's motion to vacate, filed January 10, 1984, was not a post-trial motion within the meaning of Rule 303(a), because it did not assert that the court's ruling dismissing count I was in error. The only contention of the motion was that the trial court had indicated that plaintiff would have time to present authority to the court and then ruled before plaintiff had time to present the authority. Plaintiff asserts that the motion to vacate need not be a post-trial motion within the meaning of Rule 303(a), because, in any event, the ruling of May 10, 1984, was an order denying a motion to vacate and thus was a final order appealable as a matter of right. (*Mills v. Ehler* (1950), 407 Ill. 602, 95 N.E.2d 848.) Plaintiff treated the May 10 order as the final order, and its notice of appeal was directed to that order rather than the order of dismissal of December 28, 1983.

■ We conclude that the proper procedure is for us to treat the January 10, 1984, motion as a post-trial motion within the meaning of Rule 303(a). Such a motion need only be "directed against the judgment" attacked. Here, that occurred, because the motion asked that the judgment of December 28, 1983, be vacated. A post-trial motion need not come after a trial in the traditional sense in order to toll the time for filing notice of appeal. (*Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 402 N.E.2d 231.) Technically, under modern practice, the notice of appeal should have been directed to the December 28 judgment, but by designating the ruling of May 10, 1984, as that from which appeal was taken, all of the preceding orders are brought before us even though the May 10 ruling was not a judgment. *Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610.

The January 10 post-trial motion was timely filed (Ill. Rev. Stat. 1973, ch. 110, par. 2—1203(a)). Under Rule 303(a), the time for filing notice of appeal did not begin to run until the January 10 motion was denied on May 10, 1984. As notice of appeal was filed on June 4, 1984, it was timely. We have jurisdiction. The motion to dismiss is denied.

Plaintiff's claimed cause of action arises from section 4—5—11 of the Illinois Municipal Code, which states in part:

"Any work or other public improvement which is not to be paid for in whole or in part by special assessment or special taxation, when the expense thereof shall exceed $2,500, shall be constructed as follows:

(1) By a contract let to the lowest responsible bidder after ad-

vertising for bids." (Ill. Rev. Stat. 1983, ch. 24, par. 4—5—11.) Plaintiff alleged that the village had invited bids on a public works with the invitation for bids being consistent with the terms of the foregoing and also requiring that the bids be "responsive" to the plans and specifications for the project. Plaintiff alleged (1) it was a responsible bidder and submitted the lowest bid except for one bid which was accepted, and (2) that bidder was awarded the contract. However, the complaint set forth that plaintiff's bid was responsive, while that of the winning bidder was not, because that bid did not offer to provide the required type of cylinder liners on a generator to be furnished. The only requested relief was an award of damages for plaintiff's lost profits in not obtaining the contract.

Count II was against Klingner, alleging that firm to have been the consulting engineers for the works, and that it approved the award to the other bidder. As we have explained, under the theory of *Sears*, the court's ruling dismissing that count is before us even though plaintiff's notice of appeal was stated to be from the order denying its motion to vacate the dismissal of count I. However, plaintiff has made no argument that the dismissal of count II was improper. We need not consider the December 21, 1983, judgment dismissing count II.

▮ The village does not contend that the requirement that the bids be responsive was not a valid requirement, nor does it dispute that the contract should not have been awarded to a bidder making a nonresponsive bid even though that bid was the lowest. We have no difficulty in concluding that, under the circumstances alleged, plaintiff had standing to seek some type of relief. In *Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 393 N.E.2d 535, the first district reversed a trial court judgment dismissing a complaint by an unsuccessful bidder on a city project who sought a declaratory judgment finding that the contract had been awarded to an ineligible bidder. The appellate court concluded that, even though the plaintiff had not alleged that it was the one who should have been awarded the contract, the complaint showed that the plaintiff had a sufficient right affected to have standing to seek the declaratory judgment. See also *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Merriam v. Kunzig* (3rd Cir. 1973), 476 F.2d 1233.

▮ Traditionally, the remedies for the bidder on a public works project in the position alleged by plaintiff have been limited to those of declaratory judgment as in *Stanley Magic-Door, Inc.* and to injunctive relief as in *Aqua-Tech, Inc. v. Como Lake Protection & Rehabilitation District* (1976), 71 Wis. 2d 541, 239 N.W.2d 25. More recently,

a theory has developed that such a bidder should be given a monetary award to make reimbursement for the expenses incurred by the bidder in preparing the bid that should have been accepted. (*Owen of Georgia, Inc. v. Shelby County* (6th Cir. 1981), 648 F.2d 1084; *Merriam v. Kunzig* (3rd Cir. 1973), 476 F.2d 1233.) Emphasis has been placed on the public purpose for requiring contracts for public projects to be awarded to the lowest proper bid. As that purpose is to protect the public purse, courts have not considered that purpose to be served by requiring the taxpayer to not only pay the full contract price to the bidder awarded the contract but also to pay the bidder who should have received the contract the profits that bidder would have realized if it had been awarded the contract. See 10 McQuillen, The Law of Municipal Corporations sec. 29.86, at 431 (3d ed. 1981); 64 Am. Jur. 2d *Public Works & Contracts* sec. 86 (1972).

However, as pointed out by plaintiff, very recently there has been some trend toward allowing lost profits to the public works bidder who should have received the contract. (See 10 McQuillen, Municipal Corporations sec. 29.86, at 431 n.2 (3d ed. 1981 & Supp. 1984); 64 Am. Jur. 2d *Public Works & Contracts* sec. 86.5 (Supp. 1984).) The most nearly analogous of the new cases called to our attention is *Swinerton & Walberg Co. v. City of Inglewood-Los Angeles County Civic Center Authority* (1974), 40 Cal. App. 3d 98, 114 Cal. Rptr. 834. There, as alleged here, a governmental entity allegedly awarded a public works contract to one other than the best bidder. The reviewing court held that the best bidder had stated a cause of action against that entity in promissory estoppel for monetary damages. The court reasoned that in inviting bids, the governmental entity (1) had promised to award the contract to the best bidder, and (2) should be estopped if the bidder necessarily relied on the promise. The court deemed enforcement of the promise to be necessary (1) to avoid injustice, and (2) to discourage improper practices by governmental units in awarding contracts.

The heart of this appeal is the question of whether we should extend the remedies available to the bidder who should have been awarded the type of contract here to an award of lost profits. No decision of a court of review applying Illinois law has done so. In a case bearing some similarity, the first district refused to do so in *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785. There, an alleged aggrieved bidder who had not been awarded a contract to store election equipment sought declaratory and other relief, including profits by being denied the contract. The appellate court affirmed the trial court's dismissal

of the complaint. The appellate court ruled that (1) no statute required an award to the lowest bidder, and the invitation for bids had reserved to the commissioners the right to reject bids, (2) even if the legislation requiring an award to the lowest bidder was applicable, the plaintiff was not alleged to be the lowest bidder, and (3) the plaintiff's counsel had apparently waived a claim to loss of profits by agreeing during oral argument that precedent was against any award for lost profits.

We consider little, if any, precedent on the issue before us to arise from *Hassett*, but we do not find the precedent or logic of *Swinerton* to be compelling. Even in that case, the reviewing court merely remanded the case to the trial court under a mandate by which the trial court could award lost profits if the trial court found it to be appropriate to do so. That court relied on the promissory estoppel theory of contract law as set forth in section 90 of the Restatement of Contracts. That section merely sets forth that, when there has been a breach of a promise made enforceable by detrimental reliance by the promisee, the remedy "may be limited as justice requires." (Restatement (Second) of Contracts sec. 90 (1981).) The *Swinerton* opinion also notes that "Professor Corbin has suggested [award of expenses incurred in reliance on the promise] as an equitable measure of damages in certain promissory estoppel cases. (IA Corbin, Contracts (1963), sec. 200, p. 221)." (*Swinerton & Walberg Co. v. City of Inglewood-Los Angeles County Civic Center Authority* (1976), 40 Cal. App. 3d 98, 104, 114 Cal. Rptr. 834, 838.) Thus, the two texts relied upon in the *Swinerton* opinion are speaking of the remedies available under the promissory estoppel theory in general and make no reference to its application to improper rejection of bids on public works.

The tenor of the promissory estoppel theory is that the remedy for a broken promise upon which the promisee has relied to its detriment is that the remedy be just and equitable. When we consider the long-standing public policy against requiring the public to pay both the contract price to the entity awarded the contract and also the profits that would have been earned by the entity that should have received the contract, we deem that monetary damages measured by the expenses incurred by the aggrieved bidder meet the requirements of justice and equity. Accordingly, in the absence of stronger precedent than that presented, we are unwilling to extend the remedy to an award of lost profits.

■ The trial court properly dismissed the complaint. We affirm the decision of the trial court in that respect. However, we have stated that an unsuccessful bidder on a public works project who sub-

mits the best responsive bid has a cause of action to recover from the public body the expenses incurred in preparing and presenting that bid. In its petition for rehearing, plaintiff has requested that it be given an opportunity to amend its complaint to seek such damages from the defendant village. No previous court of review in this State had held that such cause of action lies. Accordingly, we conclude that fairness requires that the plaintiff have an opportunity to amend its complaint to comply with this decision. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) In addition to affirming the decision of the trial court, we remand to the circuit court of Pike County to enable plaintiff to file an amended complaint against the defendant village of Pleasant Hill, only setting forth the above stated allegations.

Motion to dismiss denied.

Affirmed and remanded.

MILLS and McCULLOUGH, JJ., concur.